IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **United Natural Foods, Inc.,** **SUPERVALU INC., and their affiliates in interest,** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | )<br>) |
| **Teamsters Local 414, Teamsters Local 120, Teamsters Local 662, and all others conspiring, acting in concert, or otherwise participating with them or acting in their aid or behalf,** | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, by their attorneys, Littler Mendelson, P.C., as and for their Complaint allege as follows:

## PARTIES

1.  United Natural Foods, Inc. (hereinafter "UNFI") is a Delaware corporation with its principal place of business and corporate headquarters located at 313 Iron Horse Way, Providence, Rhode Island, 02908.

2.  SUPERVALU INC. (hereinafter "SVU") is a Delaware corporation with its principal place of business and corporate headquarters located at 7075 Flying Cloud Drive, Eden Prairie, Minnesota, 55344.

3.  During relevant times, UNFI, SVU, and their affiliates in interest (hereinafter "Plaintiffs") have been engaged in various operations and business activities at or related to

warehouse distribution centers that, among other things, store and deliver an array of fresh, frozen, and dry food and non-food products for grocery stores.

4. Plaintiffs are "employers" within the meaning of 29 U.S.C. § 152(2) and engaged in "commerce" or "an industry affecting commerce" within the meaning of 29 U.S.C. §§ 152(6) and (7).

5. Teamsters Local 414 (hereinafter "Local 414"), Teamsters Local 120 (hereinafter "Local 120"), and Teamsters Local 662 (hereinafter "Local 662"), collectively referred to herein as the "Unions" or "Defendants", are "labor organizations" within the meaning of 29 U.S.C. § 152(5). The Unions are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of work.

6. Local 414 maintains its principal office at 2644 Cass Street, Fort Wayne, Indiana, 46808. Local 120 maintains its principal office at 9422 Ulysses Street NE, Suite 120, Blaine, Minnesota, 55434. Local 662 maintains an office and place of business at 1546 Main Street, Green Bay, Wisconsin, 54302.

**JURISDICTION AND VENUE**

7. This is an action for damages and other relief arising out of work stoppages, picketing, and other interferences with business and operations in violation of contracts between an employer and labor organizations representing employees in an industry affecting commerce, as defined in Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, *et seq.* ("Section 301").

8. This Court has jurisdiction and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 29 U.S.C. §§ 185(a) and (c), because Local 414 maintains its principal office at 2644 Cass Street, Fort Wayne, Indiana, 46808, and because its duly authorized officers

or agents are engaged in representing or acting for employee members in this District, and because material events giving rise to this suit occurred in this District.

9. Plaintiffs further allege, based on limited discovery and with the expectation that evidentiary support will be obtained after a reasonable opportunity for further discovery, that venue is proper in this District as to Local 120 and Local 662 because these Unions' duly authorized officers or agents acted in concert with Local 414, were engaged in representing or acting for employee members in this District concerning the events at issue in this Complaint, and because material events giving rise to this suit occurred in this District. The Court has personal jurisdiction over Defendants Local 120 and Local 662 because those Defendants have sufficient minimum contacts with the State of Indiana, including contacts in furtherance of the labor dispute and alleged breaches set forth herein.

10. In addition, this Court has jurisdiction over the claims asserted in this Complaint that arise under state law because those claims are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

## **FACTS COMMON TO ALL CLAIMS**

### **THE FORT WAYNE COLLECTIVE BARGAINING AGREEMENT**

11. Kim Springer is now, and at all times mentioned herein has been, President of Local 414, authorized to act and acting on its behalf. George Gerdes is now, and at all times mentioned herein has been, Secretary-Treasurer of Local 414, authorized to act and acting on its behalf.

12. During relevant times, Plaintiffs engaged in various operations and business activities at or related to warehouse distribution facilities located at 4815 Executive Boulevard, 5020 Investment Drive, and 5025 Executive Boulevard in Fort Wayne, Indiana (hereinafter the "Fort Wayne DC").

13.     During relevant times, SVU and Local 414 were parties to a collective bargaining agreement that applied to employees represented by Local 414 at the Fort Wayne DC (hereinafter the "Fort Wayne CBA").

14.     The Fort Wayne CBA had an effective date of June 15, 2017 through September 14, 2019, which was subject to further extension in accordance with its Article 35.  A true and correct copy of the Fort Wayne CBA is attached hereto as Exhibit A.

15.     Article 11 of the Fort Wayne CBA (the "Union Cooperation" clause) required Local 414 to cooperate in maintaining and improving safe, efficient, and productive business operations. *See* Exhibit A at Sections 11:01-11:03.

16.     Article 5 of the Fort Wayne CBA (the "No Strike" clause) prohibited Local 414 and Fort Wayne DC employees from engaging in a "strike, or any other interference with the operation of" business during the life of the Fort Wayne CBA absent a refusal by the other party to "abide by the decision of the arbitrator as provided in this Agreement."  *See* Exhibit A at Section 5:01.  The express purpose of this provision, among others, was to assure "uninterrupted service" to customers.  *See id.*

17.     Under Article 5 of the Fort Wayne CBA, if employees engaged in "a work stoppage, slowdown, walkout, or cessation of work alleged to be in violation of" the Fort Wayne CBA, Local 414 was required to "immediately make every effort to persuade the employees to commence the full performance of their duties" and "immediately inform the employees that the work stoppage and/or picket line is unauthorized and in violation of" the Fort Wayne CBA.  *See* Exhibit A at Section 5:02.

18.     Article 15 of the Fort Wayne CBA (the "Stewards" clause) further provided that Local 414's stewards had "no authority to take strike action or to take any other actions interrupting [the] business, except as authorized by an official action" of Local 414.  *See* Exhibit A at Section 15:03.

19. Article 35 of the Fort Wayne CBA (the "Termination of Agreement" clause) set forth procedures that had to be followed in order for a party to terminate the Fort Wayne CBA. *See* Exhibit A at Article 35.

20. Article 35 required that one party provide the other party "[w]ritten notice of termination or desired modification" which must be given "at least sixty (60) days prior to the expiration date." *See* Exhibit A at Section 35:01. If timely notice was not given, the Fort Wayne CBA "automatically renewed from year to year thereafter." *See id.* If timely notice was given, the party giving the notice was required, among other things, to "meet and confer with the other party for the purpose of negotiating a new contract" and to "[c]ontinue in full force and effect, without resorting to strike or lockout, all the terms and conditions of" the Fort Wayne CBA "for a period of sixty (60) days after such notice is given or until the expiration date of" the Fort Wayne CBA, "whichever occurs later." *See* Exhibit A at Section 35:02.

21. Under Article 35 of the Fort Wayne CBA, if "the process of bargaining in good faith" did not result in a new contract being reached by the date the Fort Wayne CBA "legally terminates," Section 35:03 set forth the parties' "duties and obligations" when there was no immediate strike at the time that the CBA reaches its "normal expiration date." *See* Exhibit A at Section 35:03.

22. Specifically, the parties to the Fort Wayne CBA were required to "continue to bargain and negotiate in good faith . . . until either a complete agreement and understanding is reached or until either or both parties conclude that it is not probable that further negotiations will result in agreement." *See* Exhibit A at Article 35. During this period of contractually-required "good faith" bargaining, "[a]ll of the terms and provisions" of the Fort Wayne CBA are "continued in full force and effect and extended from the termination date" of the Fort Wayne CBA until "such time as the parties either enter into a new agreement" or "terminate further negotiations in the manner above mentioned." *See* Exhibit A at Sections 35:03(1) and (2).

5

23. "All of the terms and provisions" of the Fort Wayne CBA include the No-Strike commitments set forth in Article 5 and other provisions of the Fort Wayne CBA.

24. Under Article 35 of the Fort Wayne CBA, in the event Local 414 conducted a strike upon reaching "the normal expiration date," the duties and obligations set forth in Article 35, Sections 35:03(1) and (2) did not apply. *See* Exhibit A at Section 35:03(3).

## THE HOPKINS COLLECTIVE BARGAINING AGREEMENT

25. Tom Erickson is now, and at all times mentioned herein has been, President of Local 120, authorized to act and acting on its behalf. Bill Wedebrand is now, and at all times mentioned herein has been, Secretary-Treasurer of Local 120, authorized to act and acting on its behalf. Troy Gustafson is now, and at all times mentioned herein has been, a Business Agent of Local 120, authorized to act and acting on its behalf. Thomas Reardon is now, and at all times mentioned herein has been, a Business Agent of Local 120, authorized to act and acting on its behalf.

26. During relevant times, Plaintiffs engaged in various operations and business activities at or related to a warehouse distribution center located at 101 Jefferson Avenue South in Hopkins, Minnesota (hereinafter the "Hopkins DC").

27. During relevant times, SVU and Local 120 have been parties to a collective bargaining agreement that applies to employees who are represented by Local 120 at the Hopkins DC (hereinafter the "Hopkins CBA").

28. The Hopkins CBA has effective dates of June 1, 2018 through May 31, 2022 and was in effect during relevant times. A true and correct copy of the Hopkins CBA is attached hereto as Exhibit B.

29. Article 25 of the Hopkins CBA (the "Hopkins Union Cooperation" clause) requires Local 120 to cooperate in maintaining and improving safe, efficient, and productive business operations. *See* Exhibit B at Sections 25:01, 25:02, 25:03, and 25:04.

30. Article 17 of the Hopkins CBA (the "Hopkins No Strike" clause) prohibits Local 120 and Hopkins DC employees from engaging in "a strike or any other interference with the operation of" the business during the life of the CBA. *See* Exhibit B at Section 17:01. The express purpose of this provision, among others, is to assure "uninterrupted service" to customers. *See id.*

31. Article 17 of the Hopkins CBA prohibits Local 120 from authorizing, directing, requiring, causing, encouraging, and/or condoning any "strike or any other interference with the operation of the business during the life of [the] Agreement." *See id.* In the event that employees engage in a "strike, slowdown or walkout" and/or "cessation of work," Local 120 is required to "undertake every reasonable means to induce such employees to return to the job." *See* Exhibit B at Section 17:02.

32. Under Article 27 of the Hopkins CBA (the "Hopkins Picket Line" clause), employees may refuse to "enter upon any property involved in a primary labor dispute" or "go through or work behind any primary picket line." *See* Exhibit B at Article 27.

## THE GREEN BAY COLLECTIVE BARGAINING AGREEMENT

33. John Kaiser was President of Local 662 and at all times mentioned herein authorized to act and acting on its behalf. Rick Skutak was Secretary-Treasurer of Local 662 and at all times mentioned herein authorized to act and acting on its behalf. Tom Strickland was Trustee of Local 662 and at all times mentioned herein authorized to act and acting on its behalf. Craig Vandeheuvel was Chief Steward for Local 662 at the Green Bay DC and at all times mentioned herein authorized to act and acting on its behalf.

34. During relevant times, Plaintiffs engaged in various operations and business activities at or related to a warehouse distribution center located at 451 Joannes Avenue in Green Bay, Wisconsin (hereinafter the "Green Bay DC").

35. During relevant times, SVU and Local 662 have been parties to a collective bargaining agreement that applies to employees who are represented by Local 662 at the Green Bay DC (hereinafter the "Green Bay CBA").

36. The Green Bay CBA has effective dates of June 1, 2019 through May 31, 2025 and was in effect during relevant times. A true and correct copy of the Green Bay CBA is attached hereto as Exhibit C.

37. A stated purpose of the Green Bay CBA is "preventing strikes and lockouts" and "to facilitate a peaceful adjustment of all grievances and disputes that may arise from time to time" under its terms. *See* Exhibit C at p. 3.

38. Article 8 of the Green Bay CBA (the "Green Bay No Strike" clause) states that "there shall be no strike, work stoppage or slowdown authorized, sanctioned, approved or engaged in by the Union against the Employer, except for failure of either party to submit to the Arbitration Procedure or failure of either party to abide by the decision of the Arbitration Board." *See* Exhibit C at Article 8.

39. In addition to prohibiting a "strike," Article 9 of the Green Bay CBA (the "Green Bay Unauthorized Activity" clause) further prohibits "any other interference with the operation of the business during the life of this Agreement, except for refusal of the other party to abide by the decision of the Arbitrator, as provided in this Agreement." *See* Exhibit C at Section 9:01. The express purpose of this provision, among others, is to assure "uninterrupted service" to customers. *See id.*

40. In the event of an "unauthorized work stoppage or picket line, etc. in violation of" the Green Bay CBA, Local 662 is required to "make every effort to persuade the employees to commence the full performance of their duties" and "immediately inform the employees that the work stoppage and/or picket line is unauthorized and in violation of" the Green Bay CBA. *See* Exhibit C at Section 9:04.

8

41. Under Article 10 of the Green Bay CBA (the "Green Bay Protection of Rights" clause), employees may refuse to "enter upon any property involved in a primary labor dispute" or "go through or work behind any primary picket line." *See* Exhibit C at Section 10:01.

## THE 2019 FORT WAYNE CONTRACT NEGOTIATIONS

42. Negotiations for a successor agreement to the Fort Wayne CBA commenced on August 6, 2019.

43. During relevant times, Labor Relations Director Tracy McDonald was the Fort Wayne DC's chief spokesperson for the Fort Wayne DC bargaining committee during negotiations. Kim Springer served as Local 414's chief spokesperson at most bargaining sessions. George Gerdes attended other bargaining sessions as Local 414's chief spokesperson.

44. Local 414's initial proposal for a new contract included 41 items, not including proposals for improvements in wages and benefits Local 414 intended to make after language issues were resolved.

45. The parties also met for negotiations on August 8, 2019, September 3-5, 2019, and September 11-13, 2019, but did not reach an agreement on a new contract.

46. No strike occurred on September 14, 2019, the expiration date of the Fort Wayne CBA. Instead, the parties continued negotiations, meeting on September 18, 19, and 20, 2019.

47. Because there was no strike on September 14, 2019, and the negotiations continued thereafter, Article 35 of the Fort Wayne CBA required the parties to negotiate in "good faith" until a "complete agreement and understanding" on a new contract was reached or "until either or both parties conclude[d] that it [was] not probable that further negotiations [would] result in agreement." *See* Exhibit A at Sections 35:03(1) – (3). Pursuant to Article 35 of the Fort Wayne CBA, all of the terms and provisions of the Fort Wayne CBA, including the No Strike clause in Article 5, also "continued in full force and effect and extended" from September 14, 2019 until one or both parties

9

either "enter[ed] into a new agreement" or "terminat[ed] further negotiations" in the manner specified in Article 35. *See* Exhibit A at Sections 35:03(1) – (3).

48. The parties continued their negotiations on September 18, 2019, but did not reach a new agreement. Tracy McDonald requested Local 414 provide its specific objections to contract proposals in order to formulate and propose compromise language. The parties met again on September 19, 2019 and September 20, 2019, but did not reach a new agreement.

49. During the September 19-20, 2019 bargaining sessions, Tracy McDonald and/or another UNFI representative on the Fort Wayne DC bargaining committee stated to Local 414 their interest in making a strong economic offer and finding common ground on proposed contract language changes in order to make the Fort Wayne DC a more efficient and attractive option for its customers. McDonald and/or another UNFI representative on the Fort Wayne DC bargaining committee also requested additional bargaining dates from Local 414, and offered to accommodate any dates Local 414 was available, including weekends. Local 414, by and through Springer, Gerdes, and/or its other representatives or agents, refused to provide additional bargaining dates and stated that all proposals Local 414 objected to had to be dropped as a condition of any further meetings.

50. At or near the end of the September 20, 2019 bargaining session, Gerdes stated to the Fort Wayne DC bargaining committee that Local 414 would not schedule additional dates until "you get your shit off the table first" or words to that effect. Gerdes abruptly ended the bargaining session without providing additional dates for bargaining as had been requested.

51. On or about November 5, 2019, Erickson notified UNFI that he was in contact with Gerdes, that he had convinced Gerdes to consider meeting with the Fort Wayne DC bargaining committee again, but Local 414 remained unwilling to meet until all of the proposals Local 414 previously objected to were dropped.

52. After September 14, 2019, no party terminated the negotiations or indicated that it was not probable that further negotiations would result in an agreement as required by Article 35. Therefore, the No Strike commitments in Article 5 and other provisions of the Fort Wayne CBA "continued in full force and effect and extended" pursuant to Article 35.

**LOCAL 414 INITIATES A STRIKE IN FORT WAYNE**

53. On December 12, 2019, Local 414 initiated a strike and established a picket line at the Fort Wayne DC.  Local 414 did not terminate the negotiations pursuant to Article 35 of the Fort Wayne CBA prior to going on strike.  Local 414's actions violated the terms and provisions of the Fort Wayne CBA, including Article 5 and other provisions.

54. Local 414, by and through its agents, engaged in illegal and hazardous picket line activities, including, but not limited to: (a) supporting and encouraging picketers to block entry to and exit from the Fort Wayne DC property; (b) striking vehicles with their picket signs; (c) aiming blindingly bright lights at the eyes of drivers of vehicles seeking to enter or exit the Fort Wayne DC property at night; (d) following employees home; and (e) threatening employees and their families with physical and sexual violence.

55. By correspondence dated December 12, 2019, Local 414 was notified that its strike was illegal, breached the Fort Wayne CBA, and would cause irreparable harm to the business and the job security of its employees.  Local 414 was asked to confirm in writing the steps it was taking to immediately end the strike and notified that Fort Wayne DC representatives were willing and available to bargain over all open contract issues.

56. By letter dated December 13, 2019, Local 414 denied that Local 414's strike was illegal and stated that Local 414 was willing to continue negotiations starting in January 2020.

57. In an effort to end the illegal strike, by letter dated December 14, 2019, it was proposed to Local 414 that the parties meet starting on December 17, 2019 and every day thereafter, including weekends, if progress was being made.

11

58. By letter dated December 16, 2019, Local 414 stated that it had been willing to continue negotiations after the September 20, 2019 meeting, and offered to continue negotiations on December 19 and 20, 2019. At no time did the parties either "enter into a new agreement" or "terminate further negotiations" in the manner specified in Article 35.

59. The actions of Local 414 described above violated the Fort Wayne CBA and operated to extinguish any obligations that SVU might otherwise have had under the Fort Wayne CBA.

60. The actions by Local 414 and by Gerdes, Springer and other agents of Local 414 caused damages to Plaintiffs including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise operate the Hopkins DC.

**LOCAL 414 EXTENDS ITS PICKET LINE TO HOPKINS AND GREEN BAY DCS**

61. On December 17, 2019, Local 414 members began picketing the Hopkins and Green Bay DCs. Said picketing was authorized by Local 414. The purpose of the picketing was to work in concert with, induce, and/or cause Locals 120 and 662 to go on strike as part of Local 414's unlawful strike in violation of the Fort Wayne CBA.

**LOCAL 120 INITIATES A STRIKE AT THE HOPKINS DC**

62. On December 17, 2019, the Hopkins CBA (including the provisions of Article 17 and 25) was in effect and no primary dispute existed at the Hopkins DC.

63. Commencing on December 17, 2019, Erickson, Wedebrand, Gustafson, Local 120 Steward Thomas Reardon, and other agents of Local 120 authorized, directed, required, caused, encouraged, and/or condoned a strike and/or other interference with the operation of the Hopkins DC in violation of the Hopkins CBA.

64. Hopkins DC employees began walking off the job at around 10:25 a.m. on December 20, 2019. On information and belief, Reardon and other agents of Local 120 directed employees to stop working. On information and belief, Reardon and other agents of Local 120

12

communicated to employees they could not continue to work and would be kicked out of the Union if they crossed the picket line.

65. Employees assembled in a Hopkins DC parking lot where they were met and addressed by Local 120 leadership, including Erickson, Gustafson, and Wedebrand. Erickson had parked his truck in such a way as to partially block access to the main building entrance.

66. Hopkins DC General Manager James Van Dusen went out to the parking lot and requested that Erickson move his truck out of concern that emergency vehicles would be impeded from accessing the entrance, if necessary. Erickson refused, hurled profanities at Van Dusen, and demanded access to the Hopkins DC while Wedebrand appeared to use his cell phone to capture video. Van Dusen told Erickson that if the employees were on strike, they needed to leave the property. Erickson stated "we have the right to go on strike" and "we have a right to honor the picket line" or words to that effect.

67. Commencing on December 17, 2019, as a result of the actions described in the above paragraphs, Hopkins DC employees engaged in a strike, slowdown, walkout, cessation of work, and interference with the operation of the Hopkins DC. Among other things, those employees who were at work walked out and those who were scheduled to work did not report for work as scheduled.

68. By letter dated December 17, 2019, Local 120 was notified that its actions violated the Hopkins CBA and would cause irreparable harm to the business. Local 120 was notified that its obligations under the Hopkins CBA required it to immediately notify employees that Local 120 did not authorize the strike and that Local 120 was directing employees to return to work. Local 120 refused and failed to take any such steps.

69. Commencing on December 17, 2019 and continuing throughout the period of the stoppage of work described above, Erickson, Gustafson, Wedebrand, and other agents of Local

120 failed and refused to undertake every reasonable means to induce Hopkins DC employees to return to their jobs.

70. The actions by Local 120 and by Erickson, Gustafson, Wedebrand, and other agents of Local 120 caused damages to Plaintiffs including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise operate the Hopkins DC.

## LOCAL 662 INITIATES A STRIKE AT THE GREEN BAY DC

71. On December 17, 2019, the Green Bay CBA (including the provisions of Articles 8 and 9) was in effect and no primary dispute existed at the Green Bay DC.

72. Commencing on December 17, 2019, Kaiser, Skutak, Strickland, Local 662 Chief Steward Craig Vandeheuvel, and other agents of Local 662 authorized, directed, required, caused, encouraged, and/or condoned a strike and/or other interference with the operation of the Green Bay DC.

73. Green Bay DC General Manager Renee Spear was informed that Green Bay DC employees had received a text message from Vandeheuvel instructing them to either stop working or not report to work.

74. Strickland was notified that the Green Bay CBA required Local 662 to immediately notify employees that Local 662 did not authorize the strike and that Local 662 was directing employees to return to work. Local 662 refused and failed to take any such steps.

75. Strickland informed Spear that he was aware of the picketing and interference with the operation of the Green Bay DC. Strickland also informed Spear that he was unwilling to instruct Green Bay DC employees that their actions were not authorized, violated the No Strike No Lockout clause of the Green Bay CBA, and that they should immediately return to work. In response to Spear's request that Strickland inform the Green Bay DC employees that the strike and

14

interference were unauthorized and violated the CBA, Strickland said, "You need to call the company and tell them to get their heads out of their asses."

76. Commencing on December 17, 2019, as a result of the actions described in the above paragraphs, Green Bay DC employees engaged in a strike, slowdown, walkout, cessation of work, and interference with the operation of the Green Bay DC. Among other things, those employees who were at work walked out and those who were scheduled to work did not report for work as scheduled.

77. By letter dated December 17, 2019, Strickland was notified that Local 662's actions violated the Green Bay CBA and would cause irreparable harm to the business. Despite the notification, Local 662 again refused to comply with its obligations under the Green Bay CBA to immediately take steps to notify employees that Local 662 did not authorize the strike and direct them to return to work.

78. The actions by Local 662 and by Kaiser, Skutak, Strickland, Local 662 Chief Steward Craig Vandeheuvel, and other agents of Local 662 caused damages to Plaintiffs including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise operate the Green Bay DC.

## LOCAL 414 ENDS ITS FIRST STRIKE IN FORT WAYNE

79. On December 18, 2019, Local 414 ended its strike at the Fort Wayne DC and ended its picketing at the Hopkins and Green Bay DCs. After Local 414 withdrew its pickets, Local 120 and Local 662 ended their strikes and Hopkins and Green Bay employees began returning to work.

## LOCAL 414 INITIATES A SECOND STRIKE IN FORT WAYNE

80. On July 23, 2020, Local 414 initiated a second strike and established a picket line at the Fort Wayne DC. Local 414 did not terminate the negotiations pursuant to Article 35 of the Fort Wayne CBA prior to going on strike. Local 414's actions violated the no-strike commitments

expressed in provisions of the Fort Wayne CBA that remained in effect on and after September 14, 2019, including, but not limited to, Articles 5, 11, 14, 15, and 35.

81. During the second strike, in support of Local 414's illegal actions, agents of Local 120 went to Indiana and, among other things, participated in a parade of vehicles, including Local 120's 18-wheel truck, conducted in a manner designed to block ingress/egress at the Fort Wayne DC property.

82. Local 414 and Local 120, by and through their agents, engaged in illegal and hazardous picket line activities, including, but not limited to: (a) supporting and encouraging picketers to block entry to and exit from the Fort Wayne DC property, and direct ethnic, sexual, and homophobic slurs toward persons seeking ingress and egress; (b) striking vehicles with their picket signs; (c) striking a security contractor with their vehicles; and (d) trespassing on the Fort Wayne DC property.

83. The actions by Local 414, Local 120, and their agents caused damages to Plaintiffs including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise conduct operations in amounts to be established at the time of trial.

## UNFI'S AND SVU'S AFFILIATES IN INTEREST

84. During relevant times, Plaintiffs' affiliates in interest included without limitation: (a) SUPERVALU Wholesale Operations, Inc.; (b) Hopkins Operations Company, LLC and its subsidiaries, Hopkins Distribution Company, LLC and Hopkins Equipment Company, Inc.; and (c) SUPERVALU Holdings Operations Company, LLC and its subsidiaries, SUPERVALU Holdings Equipment Company, Inc. and SUPERVALU Holdings, Inc.

85. SUPERVALU Wholesale Operations, Inc. (hereinafter "SWO") is a Delaware corporation with its principal place of business and corporate headquarters located at 7075 Flying Cloud Drive, Eden Prairie, Minnesota, 55344. Hopkins Distribution Company, LLC, Hopkins

Equipment Company, Inc., SUPERVALU Holdings Equipment Company, Inc. and SUPERVALU Holdings, Inc. were merged with and into SWO effective August 1, 2020. By virtue of that merger, SWO became and is the current employer of the employees covered by the Fort Wayne, Hopkins, and Green Bay CBAs.

86. SWO is a wholly-owned subsidiary of SUPERVALU Wholesale, Inc., which is a wholly-owned subsidiary of SUPERVALU Wholesale Holdings, Inc., which is a wholly-owned subsidiary of SVU, which is a wholly-owned subsidiary of UNFI.

87. By their actions set forth herein, Defendants' actions caused damages to Plaintiffs including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise operate the Fort Wayne, Green Bay, and Hopkins DCs.

### FIRST CLAIM FOR RELIEF
### Breach of Contract – Fort Wayne CBA

88. Plaintiffs incorporate and reallege paragraphs 1 through 87 above.

89. The Fort Wayne CBA was a valid and enforceable contract that was in effect during relevant times herein.

90. Local 414 received the benefit of the contractual duties and obligations owed to it under the Fort Wayne CBA.

91. Section 35:03(1) of the Fort Wayne CBA required Local 414 to continue bargaining and negotiating in good faith after September 14, 2019, without initiating any strike or taking any other actions prohibited by Article 5, Article 35, and other terms and provisions of the Fort Wayne CBA, until one or both parties "enter[ed] into a new agreement" or "terminate[d] further negotiations" in the manner specified in Article 35.

92. Local 414 did not continue negotiations in good faith, nor did the parties to the Fort Wayne CBA "enter into a new agreement" or "terminate further negotiations" in the manner set forth in Section 35:03(1) of the Fort Wayne CBA prior to Local 414's actions in: (a) initiating a

strike in Fort Wayne commencing on December 12, 2019; (b) extending pickets to the Hopkins DC and Green Bay DC commencing on December 17, 2019; and (c) initiating a strike in Fort Wayne commencing on and after July 23, 2020.

93. Local 414, in the manner described above, violated the no-strike commitments expressed in provisions of the Fort Wayne CBA that remained in effect on and after September 14, 2019, including, but not limited to, Articles 5, 11, 14, 15, and 35.

94. As a direct and proximate result of Local 414's breach, Plaintiffs suffered substantial irreparable harm (including a loss of goodwill, reputation, and customer relationships) and damages including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise conduct operations in amounts to be established at the time of trial.

## SECOND CLAIM FOR RELIEF
### Breach of Contract – Hopkins CBA

95. Plaintiffs incorporate and reallege paragraphs 1 through 87 above.

96. The Hopkins CBA is a valid and enforceable contract that was in effect during relevant times herein.

97. Local 120 received the benefit of the contractual duties and obligations owed to it under the Hopkins CBA.

98. Local 120, in the manner described above, violated the Hopkins CBA, including, but not limited to, Articles 17 and 27.

99. As a direct and proximate result of Local 120's breach, Plaintiffs suffered substantial irreparable harm (including a loss of goodwill, reputation, and customer relationships) and damages including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise conduct operations in amounts to be established at the time of trial.

### THIRD CLAIM FOR RELIEF
### Breach of Contract – Green Bay CBA

100. Plaintiffs incorporate and reallege paragraphs 1 through 87 above.

101. The Green Bay CBA is a valid and enforceable contract that was in effect during relevant times herein.

102. Local 662 received the benefit of the contractual duties and obligations owed to it under the Green Bay CBA.

103. Local 662, in the manner described above, violated the Green Bay CBA, including, but not limited to, Articles 8 and 9.

104. As a direct and proximate result of Local 662's breach, Plaintiffs suffered substantial irreparable harm (including a loss of goodwill, reputation, and customer relationships) and damages including, but not limited to, the inability to receive and ship products, fulfill customer orders, make and receive deliveries, and otherwise conduct operations in an amount to be established at the time of trial.

### FOURTH CLAIM FOR RELIEF
### Tortious Interference with Contract

105. Plaintiffs incorporate and reallege paragraphs 1 through 87 above.

106. The Hopkins and Green Bay CBAs are valid and enforceable contracts that were in effect during relevant times herein.

107. During relevant times herein, Local 414 was aware of the Hopkins and Green Bay CBAs and their terms.

108. Local 414 intentionally induced Local 120 and Hopkins employees to breach the Hopkins CBA, including, but not limited to, Articles 17, 25, and 27, in the manner described above.

109. Local 414 intentionally induced Locals 662 and Green Bay employees to breach the Green Bay CBA, including, but not limited to, Articles 8 and 9, in the manner described above.

110. As a direct and proximate result of Local 414's tortious conduct, Plaintiffs suffered substantial irreparable harm (including a loss of goodwill, reputation, and customer relationships) and damages in an amount to be established at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1) That the Court enter an Order prohibiting Defendants from breaching their CBAs in the manner set forth above;

2) That Plaintiffs be awarded damages in an amount to be determined at trial;

3) That Plaintiffs be awarded their costs and disbursements herein;

4) That Plaintiffs be awarded their reasonable attorneys' fees; and

5) That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

Dated: January 15, 2021

Respectfully submitted,

United Natural Foods, Inc., SUPERVALU INC., and their affiliates in interest

By: */s/ Brian L. Mosby*
    *One of Their Attorneys*

LITTLER MENDELSON, P.C.
111 Monument Circle, Suite 702
Indianapolis, IN  46204
Telephone:  317.287.3600
Facsimile:   317.636.0712
E-mail: bmosby@littler.com