**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED NATURAL FOODS, INC., <br> SUPERVALU INC., and their affiliates <br> in interest, <br><br>     Plaintiffs, <br><br> v. <br><br> TEAMSTERS LOCAL 414, TEAMSTERS <br> LOCAL 120, TEAMSTERS LOCAL 662, <br> and all others conspiring, acting in concert, or <br> otherwise participating with them or acting in <br> their aid or behalf, <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   CASE NO.1:21 CV 0020 HAB-SLC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

After negotiations for a successor collective bargaining agreement (CBA) between Plaintiffs and Defendant, Teamsters Local 414 (Local 414), based in Fort Wayne, Indiana, broke down, Local 414 initiated two strikes and established picket lines at Plaintiffs' Fort Wayne, Indiana distribution center (Fort Wayne DC). United Natural Foods, Inc. (UNF) and Supervalu, Inc. (SV) (collectively, "Plaintiffs") sued under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1982), asserting that the strikes violated the terms and provisions of the Fort Wayne CBA. Plaintiffs also sued Teamsters Local 120 (Local 120), based in Minnesota, and Teamsters Local 662 (Local 662)[1], based in Wisconsin, asserting that they breached their respective CBAs and worked in concert with Local 414 to engage in unlawful sympathy strikes at

---

[1] On December 20, 2021, the Court granted Local 662's Motion to Dismiss. (ECF No. 46).

their respective distribution centers in Hopkins, Minnesota (Hopkins DC) and Green Bay, Wisconsin (Green Bay DC).

Before the Court is Local 120's Motion to Dismiss or Compel Arbitration (ECF No. 20). The parties have thoroughly briefed the motion. (ECF Nos. 21, 39, 42) and the matter is ripe for consideration. For the following reasons, Local 120's Motion will be GRANTED in part and DENIED in part.

## **FACTUAL BACKGROUND**

### *a. The Parties and the Hopkins CBA*

As set forth in the Complaint, the Plaintiffs are Delaware corporations engaged in various operations and business activities at warehouse distribution centers that, among other things, store and deliver an array of fresh, frozen, and dry food and non-food products for grocery stores. (Compl. ¶¶ 1–3, ECF No. 1). Both Local 120 and Local 414 are labor organization in which employees participate and which exist to deal with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of work. Local 120 maintains its principal office in Blaine, Minnesota while Local 414 operates out of Fort Wayne, Indiana.

The Plaintiffs, Local 120 and Local 414 are parties to separate CBAs. Plaintiffs and Local 120 are parties to a CBA which controls employer-employee interactions and business activities at the Hopkins DC. (Hopkins CBA, ECF No. 1-2). Plaintiffs and Local 414 are parties to the Fort Wayne CBA which focuses on employer-employee interactions at the Fort Wayne DC.

The Hopkins CBA is effective from June 1, 2018, through May 31, 2022, and contains a number of provisions relevant to this dispute. The Hopkins CBA contains a No Strike Clause,[2]

---

[2] Article 17 of the Hopkins CBA.

prohibiting strikes and work stoppages during their terms, and a Cooperation Clause,[3] requiring Local 120 to cooperate in maintaining and improving safe, efficient, and productive business operation. (Compl. ¶ 29). The No Strike Clause also prohibits Local 120 and Hopkins DC employees from condoning any "strike or any other interference with the operation of the business during the life of [the] Agreement." (Compl. ¶ 31). A Picket Line Clause permits Local 120 and their respective members to refuse to cross or work behind primary picket lines.[4] (Compl. ¶ 32). That provision permits bargaining unit members to refuse to "enter upon any property involved in a primary labor dispute" or "go through or work behind any primary picket line." (*Id*).

Articles 15 and 16 of the Hopkins CBA set forth a grievance and arbitration procedure. Article 16 provides for the arbitration of "any grievance not settled" through the procedures in Article 15 of the Hopkins CBA. (Hopkins CBA, §16.01). Section 15.01 defines "grievance" as follows:

### ARTICLE 15
### GRIEVANCE PROCEDURE

15.01 Any differences, disputes or complaints arising over the interpretation or application of the contents of this Agreement which cannot be resolved between the employee and his immediate supervisor shall be a grievance.

The remaining sections of Article 15 set forth the procedure to be employed when a grievance is brought under this article. (Hopkins CBA, §§15.02 – 15.05).

#### b. *Local 414's Strikes and Extension of the Strike to the Hopkins DC*

Negotiations for a successor agreement to the Fort Wayne CBA between the Plaintiffs and Local 414 began in August 2019 and continued throughout September 2019, without resolution. At some point in late September 2019, negotiations between Local 414 and the Plaintiffs broke

---

[3] Article 25 of the Hopkins CBA.

[4] Article 27 of the Hopkins CBA.

down and Local 414 was unwilling to meet to continue the bargaining process. (Compl. ¶¶ 50-51). On November 5, 2019, Local 120's President, Tom Erickson (Erickson), notified Plaintiffs that he had contacted Local 414's Secretary/Treasurer, George Gerdes (Gerdes) to get Local 414 back to the bargaining table. (Compl. ¶ 51). Apparently, this effort did not succeed because on December 12, 2019, Local 414 initiated its first strike (the 2019 Strike) and established a picket line at the Fort Wayne DC. Plaintiffs contend the 2019 Strike violates the Fort Wayne CBA.

On December 17, 2019, Local 414's members traveled to the Hopkins and Green Bay DCs to picket those locations in an effort by Local 414 to extend its strike to these locations. (*Id.* ¶ 61). This technique appears to have been successful for Local 414, as Erickson and other Local 120 agents, including Union Steward Thomas Reardon (Reardon), are alleged to have authorized an employee walk-off and directed employees to stop working at the Hopkins DC. (Compl. ¶¶ 63-64). Employees already at work walked off the job, while employees scheduled to work did not report to work. Additionally, Local 120 employees assembled in a parking lot and Local 120 representatives used a vehicle to partially block access to the main building. (*Id.* at 65–66). Plaintiffs contend these acts constitute an illegal work stoppage and strike under the Hopkins CBA.

Within a few days, Local 414 ended its strike at the Fort Wayne DC and ended picketing at the Hopkins and Green Bay DCs. Once Local 414 ended its picketing, Local 120 employees returned to work at the Hopkins DC.

But alas, troubles continued in the negotiations for a successor CBA at the Fort Wayne DC. On July 23, 2020, Local 414 initiated a second strike (the 2020 Strike) and re-established a picket line at the Fort Wayne DC. Plaintiffs' Complaint again asserts the strike by Local 414 was unlawful under the Fort Wayne CBA. This time Local 414 did not picket either the Hopkins or Green Bay

4

DCs as it had during the first strike and there is no allegation of a work stoppage at either of those facilities.

Rather, Local 414 decided to be a bit more disruptive closer to home. Members of Local 414 participated in a parade of vehicles that blocked the ingress and egress to the Fort Wayne DC (Compl. ¶ 81) and engaged in hazardous picket line activities (Compl. ¶ 82). The Complaint also alleges that agents or members of Local 120, driving an 18-wheel semi-trailer truck belonging to Local 120, traveled to the Fort Wayne DC to participate in the parade and other strike activities. (*Id.*). [5]

The above acts led to Plaintiffs' Complaint seeking damages for Local 120 (and Local 414's) breach of the no-strike provisions in their respective CBAs. [6] Plaintiffs points to provisions of the CBA prohibiting Local 414 from striking during ongoing negotiations for a new agreement and to Local 120's obligations not to engage in a sympathy strike for a sister union or direct and encourage strike activities. Local 120 has moved to dismiss the complaint on various grounds, including: lack of personal jurisdiction; improper venue; that the Complaint is barred by the statute of limitations; that the CBA requires arbitration of the dispute; and, if all that fails, that the Complaint fails to state a claim for relief against Local 120. The Court turns now to these contentions.

## DISCUSSION

### A. Jurisdictional Issues

---

[5]These activities included blocking the entrance to the Fort Wayne DC, striking vehicles with picket signs, making racist, sexist, and homophobic slurs to persons trying to enter the Fort Wayne DC, and striking a security contractor with a vehicle. (Compl. ¶82).

[6] Plaintiffs' Complaint also asserts tortious interference with contract by Local 414 in that Local 414 intentionally induced Local 120 and Local 662 to breach their respective CBAs at the Hopkins and Green Bay DCs.

As noted above, Local 120 has moved to dismiss on several grounds, some of which are jurisdictional. It has long been axiomatic that a court cannot grant relief without jurisdiction over both the subject matter and the parties. *Stoll v. Gottlieb*, 305 U.S. 165, 171–172 (1938); *Thompson v. Whitman*, 18 Wall. 457, 465 (1874). There is no dispute over the subject matter jurisdiction of this Court – indeed, disputes under § 301 of the LMRA fall within the federal question jurisdiction of federal courts. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties...."). Thus, the remaining questions are whether there is jurisdiction over the parties and proper venue.

### 1. *Personal Jurisdiction*

#### a. **Applicable Standard**

When a defendant moves to dismiss a complaint under Rule 12(b)(2), the plaintiff must establish the existence of jurisdiction. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020). A complaint is not deficient just because facts demonstrating personal jurisdiction are not included among the complaint's allegations. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). But when, as here, personal jurisdiction is challenged and a court has not held an evidentiary hearing (the parties did not seek one), the plaintiff only bears "the burden of making a prima facie case for personal jurisdiction." *Curry,* 949 F.3d at 393.

When considering a Rule 12(b)(2) motion, the Court may consider affidavits, but "in evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (alterations accepted) (internal quotation marks omitted). Thus, though the Court must accept as true "any facts in the defendants' affidavits that do not conflict with anything in the

record," *id.*, "[t]he plaintiff is entitled to have any conflicts in the affidavits (or supporting materials) resolved in its favor." *Purdue Rsch. Found.*, 338 F.3d at 783.

**b.  Legal Analysis**

Local 120 argues that the Court lacks both general and specific personal jurisdiction over it. The Court looks to Indiana's long-arm statute to determine whether it may exercise personal jurisdiction over the defendant. *Rodriguez v. Cavitec AG*, 2010 WL 2519715, at *4 (N.D. Ind. June 14, 2010). Under the statute, the outer boundary of the personal jurisdiction of an Indiana court is set by the Due Process clause of the Fourteenth Amendment. IND. R. TRIAL. P. 4.4(a). Under the Due Process clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Personal jurisdiction may be exercised if the court has either general or specific personal jurisdiction. *See KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013).

General jurisdiction requires that a defendant's contacts with a forum state be sufficiently "'continuous and systematic' as to render [them] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011); *see also Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The general jurisdiction threshold is "high" and "'considerably more stringent' than that required for specific jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (citing *Purdue Research Fund*, 338 F.3d at 787). "General jurisdiction exists when a foreign corporation's continuous corporate operations within a state [are] so substantial

7

and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC,* 2017 WL 1093150, at *7 (N.D. Ill. Mar. 23, 2017) (citing *Daimler*, 571 U.S. at 118). General jurisdiction thus "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.*

Here, the court lacks general jurisdiction over Local 120. Local 120 submitted the Declaration of Tom Erickson, Local 120's President, in which he avers that Local 120 maintains no offices outside Minnesota, represents no Indiana bargaining members, and all representative activities related to the Hopkins CBA have occurred in Minnesota. (Erickson Decl., ECF No. 22, ¶¶'s 4–7). Plaintiffs do not dispute these statements because, in their view, the well-pled allegations establish specific jurisdiction.

Specific jurisdiction exists when a defendant's suit-related conduct creates a substantial connection with the forum state. *Walden v. Fiore,* 571 U.S. 277, 284 (2014). There are three "essential requirements" for a court to exercise specific jurisdiction over an out-of-state defendant: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; (2) the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities; (3) the exercise of personal jurisdiction must follow traditional notions of fair play and substantial justice. *Curry v. Revolution Labs. LLC,* 949 F.3d 385, 392 (7th Cir. 2020).

In determining whether it may exercise specific personal jurisdiction over a defendant, the Court should consider the scope of personal jurisdiction over each of the claims alleged in the plaintiff's complaint. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 164 F. Supp. 3d 1040, 1047–49 (N.D. Ill. 2016); *see also Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp.

2d 694, 708–13 (N.D. Ill. 2014). This is because "[p]ermitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006); *accord Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999); *see also* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. § 1351 (3d ed. 2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.").

Plaintiffs' Complaint contains a section titled "Facts Common to All Claims" and recites facts related to both the 2019 and 2020 Strikes. Count II of the Complaint, the sole count directed at Local 120's conduct, adopts those common facts and generally asserts that Local 120 breached Articles 17 and 27 of the Hopkins CBA. The Court is left to speculate (and apparently so is Local 120, see ECF No. 21, n. 2) as to exactly what actions support the breach of contract claims against Local 120. It is, however, a fair reading when the Complaint is read as a whole that Plaintiffs allege two separate breaches of the Hopkins CBA in Count II – one for Local 120's conduct for the 2019 Strike and one for the 2020 Strike. For this reason, the Court assesses specific personal jurisdiction for each of these two potential claims.

Plaintiffs point to several allegations that they assert show that Local 120 purposely directed activities in Indiana related to both the 2019 and 2020 Strikes which, in turn, caused the Plaintiffs injury in Indiana. For instance, Plaintiffs point to paragraph 51 of the Complaint alleging that prior to the 2019 Strike, Erickson notified the Plaintiffs in Indiana that he had contacted Gerdes

to encourage him to resume bargaining sessions with the Fort Wayne DC bargaining committee. (Compl. ¶ 51). And, at paragraphs 81 and 82, Plaintiffs allege that after the 2020 Strike began, agents of Local 120 came to Indiana, participated in a parade of vehicles using a truck owned by Local 120 as a show of solidarity, and otherwise supported and encouraged picketing line activities.

In response, Local 120 attempts to dispute these allegations with Erickson's Affidavit. As to the specific above paragraphs, Erickson alleges that: (1) he spoke with UNF[] about the willingness of Gerdes from Local 414 to meet with UNF but he was acting in his capacity as an agent of the International Brotherhood of Teamsters, Warehouse Division, and not as President of Local 120; (2) no business agents from Local 120 went to Indiana or participated in the strike, and none engaged in picketing; (3) a Local 120 organizer, Karlin Bean (Bean) and another individual "drove to Indiana with a Local 120 vehicle and participated in a parade of vehicles as a show of union solidarity"; and (4) Bean and the other individual did not participate in any picketing in Indiana or engage in any other activities related to the Local 414 strike. (Erickson Aff. ¶¶ 11–12).

Setting aside for now Erickson's averment that he was not acting in a representational capacity of Local 120 when he contacted Local 414 before the 2019 Strike, there remains sufficient contact with Indiana for Local 120's conduct related to the 2020 Strike to withstand a due process challenge. Although it tries to downplay it, Local 120 admits in its brief that "Local 120's only connection and interaction with the forum state in the 2020 strike involved sending an organizer and an unemployed worker to drive in a parade of vehicles for a single day." (ECF No. 21 at 16). Local 120 then asserts that it is unreasonable and unforeseeable that it would be haled into court when "its only connection with the state and the underlying controversy was fleeting…" (*Id.*) This

Court disagrees. By sending members or agents[7] authorized by Local 120 to Indiana in a vehicle Local 120 owned to participate in the 2020 striking activities of Local 414, albeit for a mere 24 hours, Local 120 purposely availed itself of the reasonable and foreseeable consequences such actions created. If those activities breached the Hopkins CBA as Plaintiffs' Complaint seemingly alleges, they occurred in Indiana, were directed to Indiana, and are alleged to have caused harm in Indiana. For this reason, the Court finds specific personal jurisdiction exists over Local 120 related to the 2020 Strike and the alleged breach of the Hopkins CBA. The motion to dismiss for lack of personal jurisdiction is DENIED as to this claim in Count II.

The same cannot be said of the claim that Local 120's actions, taken solely in Minnesota, during the 2019 Strike support personal jurisdiction in Indiana over that claim. Regardless of whom Erickson was an agent for when he made a single telephone call to Indiana or injected himself into the negotiations as Plaintiffs argue, there are simply insufficient contacts with Indiana to satisfy the due process inquiry. All of the Complaint's allegations asserting a breach of the Hopkins CBA for its conduct in the 2019 Strike occurred in Minnesota. If Local 120 authorized a work stoppage in violation of the Hopkins CBA, those activities occurred in Minnesota, not Indiana, and must be brought there. This Court lacks personal jurisdiction over Local 120 for any alleged breach of the Hopkins CBA for its conduct occurring in Minnesota during the 2019 Strike. To the extent, Count II of the Complaint seeks damages for breach of the Hopkins CBA relating to Local 120's conduct during the 2019 Strike, that claim is DISMISSED without prejudice.

### 2. *Improper Venue*

---

[7]If Local 120 disputes whether the individuals traveling to Indiana were its agents, whether a person is an agent for purposes of section 301(c) is typically one of fact, *see, e.g.*, *Sherman v. American Fed'n of Musicians,* 588 F.2d 1313, 1314–15 (10th Cir.1978) (whether a person acted as an agent for union is a question of fact).

11

Next, Local 120 argues that venue is improper in this district under § 301(c) of the LMRA, 29 U.S.C. §185(c). That provision reads:

(c) Jurisdiction

For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

Despite its jurisdictional label, case law is clear that § 301(c) of the LMRA deals with venue and not subject matter jurisdiction. *Cent. Operating Co. v. Utility Workers of Am.,* 491 F.2d 245, 250 n. 6 (4th Cir.1974) ("It has been uniformly held that [29 U.S.C. §185] subsection (c) is a venue provision in spite of the use of the word 'jurisdiction.'"). Courts have observed, however, that the analyses under § 301(c) and traditional due process are functionally equivalent. *See, e.g.*, *Reed v. Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am.,* 945 F.2d 198 n. 3 (7th Cir.1991); *Local 670 v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 822 F.2d 613, 620–21 (6th Cir.1987). Indeed, "the requirements under both section 301(c) and the due process 'minimum contacts' standard have been held to be so similar that analysis under either would yield the same result." *Reed,* 945 F.2d at 201 n. 3. Thus, venue is proper in any court with personal jurisdiction over the parties. *Id.*

Local 120 admitted that agents representing Local 120 were sent driving a tractor trailer owned by Local 120 to participate, at the very least, in acts of union solidarity with Local 414. When deciding a motion to dismiss for improper venue, "[f]actual conflicts are resolved in the plaintiff's favor, and the court may draw reasonable inferences from those facts." *Johnson v. Creighton Univ.*, 114 F. Supp. 3d 688, 696 (N.D. Ill. 2015). Accordingly, resolving this conflict in Plaintiffs' favor, with the inference being that by its above acts Local 120 officers or agents

12

engaged in representing or acting for employee members of Local 120 in Indiana, the Court finds

that venue is proper in this district under the venue provision of the LMRA.

## B.  Motion to Compel Arbitration

### 1.  *Applicable Standard[8]*

Arbitration is a favored dispute resolution process in the law. But it is also a contractual

matter. For this reason, "a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)

(internal quotation marks omitted); *Granite Rock Co. v. Int'l Brod. of Teamsters,* 561 U.S. 287,

299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those

disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.")

(original emphasis, internal citations omitted). Accordingly, on a motion to compel arbitration,

the court "must first determine whether the [movant] is making a claim that is, 'on its face,'

governed by the [agreement's] arbitration clause." *Int'l Bhd. of Elec. Workers Loc. 2150 v.

NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (quoting *United

Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)).

### 2.  *Legal Analysis*

Local 120 seeks to compel Plaintiffs to pursue their claims through the arbitration provision

in the Hopkins CBA. Seizing on language from *Drake Bakeries, Inc. v. Local 150,* 370 U.S. 254,

257–60 (1962), Local 120 asserts that the Plaintiffs must exhaust available arbitral remedies before

---

[8]Motions to compel arbitration concern venue and are properly addressed under Federal Rule of Civil Procedure 12(b)(3). *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (an arbitration clause is "simply a type of forum-selection clause," and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)). The Court may consider materials outside the pleadings when evaluating such a motion. *Johnson*, 556 F. App'x at 544-45.

suing a union under section 301 for damages related to an alleged breach of a no-strike obligation. *See Mautz v. Oren, Inc. v. Teamsters, Chauffeurs, and Helpers Union, Local No. 279,* 882 F.2d 1117, 1126 (7th Cir. 1989) (*citing Drake Bakeries, Inc. v. Local 150,* 370 U.S. 254, 257–60 (1962) (holding that clause requiring arbitration of "all complaints, disputes or grievances arising between [the agreement's signatories]" mandated arbitration of employer-initiated claims and complaints).

Local 120's position hinges on the one fact Plaintiffs dispute — that the breach of the no-strike obligations in Article 17 is governed by the arbitral remedies in the Hopkins CBA. Instead, the Plaintiffs argue that employer-initiated disputes, such as the one in this case, are not governed by the Hopkins CBA. *See Faultless Div. v. Local Lodge No. 2040 of Dist. 153 Int'l Machinists & Aerospace Workers,* 513 F.2d 987, 990 (7th Cir. 1975).

To determine whether the parties agreed to submit a "particular dispute to arbitration, [the court] must turn to the specific language of the arbitration clause. ... [In so doing, the court] look[s] first to the plain meaning of the provision and strive[s] to avoid absurd results." *Int'l Bhd. of Elec. Workers, Loc. 21 v. Ill. Bell Tel. Co.,* 491 F.3d 685, 688 (7th Cir. 2007). At the same time, the court must remain "mindful that both the law and public policy strongly favor arbitration, and that the party seeking arbitration is entitled to the benefit of the doubt. Where the arbitration clause is broad, [the court] presume[s]arbitrability of disputes. And where any ambiguity as to the scope of the clause exists, [the court] will construe it in favor of the party seeking arbitration." *NextEra,* 762 F.3d at 594 (internal citations omitted). Consequently, if a "grievance, on its face, clearly falls within the scope of [an] arbitration clause," the "dispute will be arbitrable ... unless [the court] can say otherwise with 'positive assurance'"—that is, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

14

asserted dispute." *Ibid.* (quoting *United Steelworkers of Am. v. Warrior & Gulf*, 363 U.S. 574, 582-83 (1960).

Turning then to the specific language in the Hopkins CBA, Article 15, read along with Article 16 broadly provides for arbitration of "[a]ny differences, disputes or complaints arising over the interpretation or application of the contents of this Agreement…." (Hopkins CBA, Article §15.01). So far so good for Local 120. But § 15.01 also contains a limiting provision that reads "which cannot be resolved between the employee and his immediate supervisor shall be a grievance." It is this limiting language that causes Local 120 problems. This is because Article 16 requires arbitration only of "grievances" that fall under Article 15 and, as Plaintiffs point out, the limiting language only applies to unresolved disputes between an employee and their supervisor. Thus, in Plaintiffs' view, because the CBA limits grievances to employee disputes over the content and interpretation of the CBA, it is inapplicable to employer disputes.

The Seventh Circuit and district courts circuit wide have repeatedly recognized that an arbitration clause found within a CBA's employee-oriented grievance procedure that gives only the union the option of proceeding to arbitration does not apply to employer-initiated disputes. *See Teledyne Wisconsin Motor v. Local 283, United Autom., Aerospace, and Agr. Implement Workers of America, UAW,* 530 F.2d 727 (7th Cir. 1976); *Faultless Division,* 513 F.2d 987; *Rental Services Corp. USA, Inc. v. Int'l Union of Operating Engineers, Loc. 150, AFL–CIO,* No. 99–5094, 1999 WL 1144904 (N.D. Ill., Dec. 9, 1999); *United Parcel Service, Inc. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 705,* No. 95–6304, 1998 WL 699670 (N.D. Ill., Sept. 30, 1998).

In *Faultless Division,* the company sued the union over a work stoppage which, the company argued, violated the "no strike" provision of the parties' CBA. The CBA in that case

provided a grievance procedure through which employees could submit disputes to union representatives and, eventually, to company representatives. *Faultless Division,* 513 F.2d 987, 988–89. If the grievance still was not resolved after presenting it to the company, "[t]he company shall be notified in writing by the Union of its intention to arbitrate said grievance." *Faultless Division,* 513 F.2d 987, 989. The CBA's only discussion of arbitration was in the context of the employee-oriented grievance procedure which gave only the union, and not the company, the option of proceeding to arbitration. *Id.*

Applying traditional contract principles, the Seventh Circuit held in *Faultless Division* that the CBA's grievance and arbitration procedure applied only to employee and union-initiated grievances and noted that it had been unable to find any language in the CBA calling for a different conclusion. *Id.* at 990. The court acknowledged the principle that doubts over arbitrability should be resolved in favor of arbitration but found that "there is no occasion to resort to this congressional policy (favoring arbitration) in a case where the contract, fairly read as a whole, is not susceptible to a construction that the parties bound themselves to arbitrate the dispute before the court." *Id.* at 991 (citation omitted).

Distinguishing the Hopkins CBA from the CBA in *Faultless,* Local 120 argues that §15.03 of the Hopkins CBA permits either party to submit a grievance to arbitration. True, Section 15.02 sets forth a 3-step grievance process to be employed when a grievance exists. Section 15.03, in turn, states that if an agreement is not reached through that process, "the grievance may be submitted to arbitration in accordance with Article 16. Such decision to move to arbitration must be done *by either of the local parties* within thirty (30) days…." (emphasis added). This language, Local 120 asserts, differentiates the Hopkins CBA from the language in *Faultless* because either of the parties may begin arbitration if the grievance process breaks down.

16

This argument, however, ignores one significant fact that determines the issue. While either party has a right to demand arbitration of employee disputes with the employer, there is simply no provision in the Hopkins CBA authorizing the employer to initiate arbitration other than for a grievance as defined in § 15.01. This dispute does not fall within § 15.01's definition of grievance as it is not a dispute over the CBA that was unresolved between an employee and their supervisor. Local 120 has not pointed to any provision in the Hopkins CBA which grants the Plaintiffs authority to demand arbitration let alone one that requires it to arbitrate disputes over alleged breaches of the CBA by the union. For this reason, this dispute falls outside the scope of the arbitration provision and Plaintiffs may proceed on its breach of contract claim in this court. The Motion to Compel Arbitration is, therefore, DENIED.

## C.  Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

### 1.  *Applicable Standards*

Local 120 has also moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6). It asserts two grounds: that the breach of contract claims are outside the applicable statute of limitations; and, even if timely brought, the Complaint fails to state a breach of contract claim against it.

Courts seldom dismiss claims under Rule 12(b)(6) for failure to be brought within the statute of limitations, because the statute of limitations is an affirmative defense. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014). Dismissal based on affirmative defenses is rare because "these defenses typically turn on facts not before the court at [this] stage." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). For dismissal to be granted, "the allegations of the complaint itself [must] set forth everything necessary to satisfy the affirmative defense." *Chi. Bldg. Design*, 770 F.3d at 613–14 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If there is "*any* set of facts

17

that if proven would establish a defense to the statute of limitations," then a motion to dismiss should be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). But claims may be dismissed under Rule 12(b)(6) when the running of the statute of limitations is apparent on the face of the complaint.

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2. Statute of Limitations

Local 120 argues that the Plaintiffs' breach of contract claims in Count II should be dismissed because the claims were filed outside the limitations period permitted by the LMRA. To that end, Local 120 asserts that Plaintiffs' § 301 claims are subject to a six-month statute of limitations for motions to compel arbitration under the LMRA – a period which has long since passed. Plaintiffs, in response, argue that its claim is a straight breach of contract claim under § 301 and, as such, the operable limitations period is determined under state law.

The LMRA contains no statute of limitations for claims brought under § 301. As a result, the Supreme Court held that "the timeliness of a s[ection] 301 suit ... is to be determined ... by reference to the appropriate state statute of limitations." *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966). In *Hoosier Cardinal Corp.,* the Supreme Court held that the statute of

18

limitations for state law contract claims governs claims for violating § 301 that are "essentially ... action[s] for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement." 383 U.S. at 704–05 & n.7. "Such an action closely resembles an action for breach of contract cognizable at common law." *Id.* Applying this rule, the Court held that Indiana's breach of contract statute of limitations applied. Even so, the Court prognosticated that other types of § 301 suits might call for application of different rules on timeliness, *id.* at 705 n. 7.

So was the case in *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. at 162 (1983), where the Supreme Court examined the limitations period that applied to hybrid § 301 claims – claims by an employee that an employer breached the CBA and the union violated its duty of fair representation during the grievance process. There, the Court found that this type of § 301 suit should be subject to the six-month statute of limitations in section 10(b) of the NLRA. To reach this conclusion the Court distinguished the "straight-forward" § 301 suit in *Hoosier Cardinal* from the "hybrid" § 301 suit in *DelCostello*. The Court reflected that *Hoosier Cardinal* did not involve any agreement to submit disputes to arbitration, that the suit was brought by the union itself rather than by an individual employee, and it did not involve any of the consensual processes that federal labor law is designed to protect. *DelCostello,* 462 U.S. at 162-163. In contrast, because the facts in *DelCostello* directly implicated the contractually created procedure for resolving disputes, the Court found it appropriate to apply a shorter limitations period. However, the Court was clear that its holding "should not be taken as a departure from prior practice of borrowing limitation periods for federal causes of action, in labor law or elsewhere." 462 U.S. at 171. The rule remains, then, that unless it strays from federal law or policy, a federal court will apply the most analogous state limitation period in a § 301 suit. *Id.*

Based in part on *Delcostello*'s references to federal policies, Local 120 asserts that the general rule is inapplicable in this case because of the arbitration provision in the CBA and the federal policy favoring the prompt resolution of labor disputes. As part of this argument, Local 120 somehow construes Plaintiffs' complaint as one to compel arbitration and asks the Court to apply the six-month statute of limitations for such actions set forth in *United Food & Com. Workers Loc. 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1346 (7th Cir. 1991). For their part, Plaintiffs point out that their complaint is based on breach of contract, and it has "expressly rejected the premise that the claims asserted here are arbitrable." (ECF No. 39 at 47).

It is unnecessary to unravel this argument because the holding in *Int'l Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222, 225 (7th Cir. 1986) is determinative. In *Home Elevator*, the Seventh Circuit reversed the district court and held that Indiana's two-year statute of limitations applied to § 301 cases brought to enforce contractual obligations in a collective bargaining agreement. In that case, brought by the union against the employer, the union alleged that the defendant employer had not paid its employees certain wage rates established by a CBA. *Home Elevator,* 798 F.2d at 224. Acknowledging that Indiana's two-year statute of limitations[9] for suits involving terms, conditions, and privileges of employment includes the phrase "except actions based on a written contract," the Seventh Circuit still concluded that for actions in which "the basic allegation ... is that a company breached the collective bargaining agreement," *id.* at 227, the two-year period would apply as the most analogous in Indiana's statutory scheme.

---

[9]Indiana has multiple limitations provisions for breach of contract actions depending on the nature of the contract claim.

In reaching the above conclusion, the court considered and rejected the very argument asserted by Local 120 here, that is, that the existence of an arbitration provision in the CBA distinguishes it from the CBA in *Hoosier Cardinal* and requires a shorter limitations period:

> However, like *Hoosier Cardinal*—and unlike *DelCostello*—the basic allegation in this case is that a company breached the collective bargaining agreement. As, in *Hoosier Cardinal,* the interests at stake in this section 301 suit are similar to those that the state legislature would have considered when it established a limitations period for a breach of contract action. The fact that the contract at issue also contained an arbitration clause does not reduce the similarity between the section 301 cause of action and a breach of contract claim. The existence of an alternate forum for the resolution of the dispute does not change the character of the legal claim.

*Home Elevator,* 798 F.2d at 227–28.

The character of the legal claims brought by the Plaintiffs are straight-forward breach of contract actions. The scope of the negotiated arbitration clause, which this Court has already determined does not include the claims made here, do not implicate any federal policy concerns. Indeed, the general notion that federal policy favors arbitration and the prompt resolution of labor disputes is not, by itself, sufficient to justify a rule different from the norm.

> Rapid resolution of industrial disputes is, without doubt, a goal of federal labor policy. The use of private dispute resolution mechanisms such as arbitration to achieve quick resolution of such disputes is well-established... Yet, the recitation of these general principles cannot, standing alone, be the basis for concluding that, simply because the six-month federal period is shorter than any analogous state limitation period, it is necessarily more appropriate. Different degrees of dispatch are necessary or appropriate in different industrial relations contexts. Indeed, parties to a collective bargaining agreement often set forth in the agreement specific time frames for the resolution of disputes.

*Home Elevator,* 798 F.2d at 228. The Motion to Dismiss based on the statute of limitations is DENIED.

### 3. Failure to State a Claim

Finally, Local 120 argues that Plaintiffs' complaint fails to state a claim for breach of the Hopkins CBA. A breach of contract claim requires proof of three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff. *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). Plaintiffs have properly alleged these elements here.

Local 120 argues that other contract provisions in the CBA show that it did not breach the Hopkins CBA. The problem for Local 120, however, is that it is not challenging the sufficiency of the complaint. Rather, it is challenging the merits of the complaint. Local 120 argues that Plaintiffs cannot show a breach because any claim against it for breach is derivative of the Plaintiffs allegation that Local 414 breached its CBA. On a motion to dismiss, however, Plaintiffs need not *show* anything. *Brown v. Budz,* 398 F.3d 904, 914 (7th Cir. 2005) (" [T]he plaintiff does not have to "show" anything; he need only allege."). Plaintiffs here need only allege plausible allegations of breach of contract. Because Plaintiffs have done so, the Motion to Dismiss is DENIED.

## **CONCLUSION**

Consistent with the discussion above, Local 120's Motion to Dismiss or, in the Alternative, to Compel Arbitration is DENIED in PART and GRANTED in PART. (ECF No. 20). The Motion is GRANTED as to any claim in Count II asserting breach of contract based on acts during the 2019 Strike in Minnesota. The Motion is DENIED in all other respects.

SO ORDERED on February 8, 2022.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT