UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED NATURAL FOODS, INC., SUPERVALU INC., and their affiliates in interest, <br><br> Plaintiffs, <br><br> v. <br><br> TEAMSTERS LOCAL 414, et al. <br><br> Defendants. | ) ) ) ) ) ) ) ) CASE NO.1:21 CV 0020 HAB-SLC ) ) ) ) ) ) ) |

**OPINION AND ORDER**

After negotiations for a successor collective bargaining agreement (CBA) between Plaintiffs and Defendant, Teamsters Local 414 (Local 414), based in Fort Wayne, Indiana, broke down, Local 414 initiated two strikes and established picket lines at Plaintiffs' Fort Wayne, Indiana distribution center (Fort Wayne DC). United Natural Foods, Inc. (UNF) and Supervalu, Inc. (SV) (collectively, "Plaintiffs") sued under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1982), asserting that the strikes violated the terms and provisions of the Fort Wayne CBA. Plaintiffs also sued Teamsters Local 120 (Local 120), based in Minnesota, and Teamsters Local 662 (Local 662) (collectively, "the Locals"), based in Wisconsin, asserting that they worked in concert with Local 414 to engage in unlawful strikes at their respective distribution centers in Hopkins, Minnesota (Hopkins DC) and Green Bay, Wisconsin (Green Bay DC).

The Locals each moved to dismiss, compel arbitration, or both. (ECF Nos. 20, 23, 25). The Court granted Local 662's motion to dismiss (ECF No. 46). The Court granted, in part, Local 120's

motion to dismiss but denied its request to compel arbitration. (ECF No. 47).[1] This Opinion and Order involves the remaining motion filed by Local 414. Local 414's Motion to Dismiss and Compel Arbitration (ECF No. 25) will be DENIED in part and GRANTED in part as set forth below.

## FACTUAL BACKGROUND

As set forth in the Complaint, the Plaintiffs are Delaware corporations engaged in various operations and business activities at warehouse distribution centers that, among other things, store and deliver an array of fresh, frozen, and dry food and non-food products for grocery stores. (Compl. ¶¶ 1–3, ECF No. 1). Local 414 is a labor organization in which employees participate and which exists to deal with employers about grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of work. Local 414 maintains its principal office in Fort Wayne, Indiana and represents drivers, warehouse, maintenance, and warehouse sanitation employees at the Fort Wayne DC.

**A.     Fort Wayne CBA**

The Fort Wayne CBA (ECF No. 1-1) had an effective date of June 15, 2017, and expired on September 14, 2019, without another agreement in place. The Fort Wayne CBA contains several pertinent Articles relevant here: Article 5 ("No Strike Provisions"), prohibited Local 414 and the Fort Wayne DC employees from engaging in a "strike, or any interference with the operation of" business during the term of the Fort Wayne CBA. (Compl. ¶ 16; ECF No. 1-1 at 6-7)[2]; Article 11 ("Cooperation Provisions"), required Local 414 to cooperate in maintaining and

---

[1] The parties' familiarity with the Court's prior orders is assumed.

[2] Under Article 5, if employees engaged in a work stoppage, slowdown, walkout or cessation of work in violation of the CBA, Local 414 was required to "immediately make every effort to persuade employees to commence the full performance of their duties" and "immediately inform the employees that the work stoppage and/or picket line" violated the Fort Wayne CBA. (Compl. ¶ 17).

2

improving safe, efficient, and productive business operations (Compl. ¶15; ECF No. 1-1 at 8-9); and Article 35 of the CBA ("Termination Provisions") sets forth procedures to be followed for a party to terminate the CBA. (Compl. ¶¶s 19-22; ECF No. 1-1 at 33-34). The Complaint alleges that Local 414 violated one or more of these Articles.

For purposes of this motion, Article 14 of the Fort Wayne CBA is also relevant. That Article sets forth a four-step grievance and arbitration procedure for aggrieved employees. Section 14:01 provides the scope of this procedure stating that an aggrieved employee "must contact his/her supervisor … with any occurrence, differences, disputes or complaints arising over the interpretation or application of the contents of this agreement." That section then specifies "[a]ny issue which cannot be resolved between the aggrieved employee and a supervisor within twenty-four (24) hours (one workday) will be moved to Step #1 within ten (10) calendar days." (ECF No. 1-1 at 9).

The Step process is outlined in §14:02. Step 1 requires the "aggrieved employee" to engage in a conference with the shift steward and shift supervisor related to the grievance (ECF No. 1-1 at 9). If the grievance remains unresolved, it moves on to a Step 2 grievance meeting with a Step 2 Committee. Failure to resolve the grievance at Step 2 advances the grievance to Step 3 – the Labor-Management Council. The procedures conclude at Step #4 providing for arbitration by either party "[i]n the event the Labor-Management Council…cannot reach agreement" about the grievance. (*Id.* at 10)

Besides the above provisions, the No-Strike Provision authorizes the use of the grievance procedures by an employee solely to decide "[t]he question of whether employees who refuse to work during [an] unauthorized work stoppage…or who fail to cross unauthorized picket lines at their Employer's premises shall be considered as participating in an unauthorized work stoppage

in violation of the Agreement….." The No-Strike Provisions expressly deny use of the grievance procedures to employees relating to any discipline imposed by an employer for the employee's participation in an unauthorized strike, slowdown, or walkout. (ECF No. 1-1 at 7).

**B. Local 414's 2019 Strike**

Section 35.01 of the Termination Provisions requires "written notice of termination or desired modification" by a party "at least sixty (60) days prior to the [CBA's] expiration date." (ECF No. 1-1 at 33). Without that notice, the Fort Wayne CBA automatically renews year to year. If timely notice is given, the party giving notice must "meet and confer with the other party for the purpose of negotiating a new contract" and to "continue in full force and effect, without resorting to strike or lockout, all the terms and conditions" of the Fort Wayne CBA.[3] The Complaint does not assert that Local 414 failed to provide timely notice under § 35.01 to begin negotiations and preclude the automatic annual renewal of the CBA.

Negotiations for a successor agreement to the Fort Wayne CBA began in August 2019 and continued throughout September 2019, without resolution. On September 14, 2019, the Fort Wayne CBA expired. No strike occurred on the expiration date of the contract and, under § 35:03 of the Termination Provisions, the parties were required to continue to negotiate in good faith until they reached a "complete agreement and understanding" on a new contract or "until either or both parties conclude that it is not probable that further negotiations will result in an agreement." (ECF No. 1-1, § 35.03 ¶1). During this negotiation period after expiration of the CBA, § 35.03 ¶ 2 requires all the terms and provisions of the Fort Wayne CBA to remain in effect. (*Id.* §35.03 ¶ 2; Compl. ¶ 22).

---

[3]The terms of the Fort Wayne CBA would remain in effect until the later of 60 days after notice is given or until the expiration date of the CBA.

After a meeting on September 20, 2019, negotiations between Local 414 and the Plaintiffs broke down and agents of Local 414 refused to provide more bargaining dates. Local 414's agents demanded that all proposals to which it objected be dropped before Local 414 would return to the bargaining table. (Compl. ¶¶ 50-51). Apparently, Plaintiffs did not indulge Local 414's conditions and Local 414 initiated its first strike on December 12, 2019, (the 2019 Strike) establishing a picket line at the Fort Wayne DC. Plaintiffs contend the 2019 Strike violates the No Strike Provisions in the Fort Wayne CBA and that Local 414 violated the Termination Provisions requiring that Local 414 provide notice that it was terminating the negotiations or believed it was "not probable that further negotiations would result in an agreement." (Compl. ¶¶s 52-53). In a letter dated December 16, 2019, Local 414 indicated, contrary to its prior agents' representations, that it had been willing to continue negotiations after the September 20, 2019, meeting. (Compl. ¶ 58).

**C.  Extension of Fort Wayne Strike to Hopkins and Green Bay DCs**

On December 17, 2019, Local 414's members traveled to the Hopkins and Green Bay DCs to picket those locations in an effort by Local 414 to extend its strike to these locations. (Compl. ¶ 61). This technique appears to have been successful for Local 414, as the Complaint asserts that members of Locals 120 and 662 either refused to cross the picket lines established by Local 414 or engaged in an employee walk-out in solidarity with Local 414. (*Id.* ¶¶'s 61-78). Plaintiffs allege that the purpose of this picketing by Local 414 was to induce Locals 120 and 662 to engage in sister strikes violating their own CBAs. (*Id.* ¶ 61).

**D.  End of the 2019 Strike and the 2020 Strike**

The day after Local 414 extended its strike to the Hopkins and Green Bay DCs, Local 414 ended the 2019 Strike at the Fort Wayne DC and ended its picketing at the Hopkins and Green

Bay DCs. Once Local 414 ended its picketing, employees at the Hopkins and Green Bay DCs returned to work.

But troubles continued in the negotiations for a successor CBA at the Fort Wayne DC. On July 23, 2020, Local 414 initiated a second strike (the 2020 Strike) and re-established a picket line at the Fort Wayne DC. Plaintiffs' Complaint again asserts the strike by Local 414 was an unlawful strike under the No Strike Provisions and that Local 414 violated the Termination Provisions by failing to terminate the negotiations.

During the 2020 Strike, Local 414 did not picket either the Hopkins or Green Bay DCs as it had during the 2019 Strike and there is no allegation of a work stoppage at either of those facilities. Rather, Local 414 decided to be a bit more disruptive closer to home. Members of Local 414 participated in a parade of vehicles that blocked the ingress and egress to the Fort Wayne DC (Compl. ¶ 81) and engaged in hazardous picket line activities (Compl. ¶ 82).[4]

The above acts led to Plaintiffs' Complaint seeking damages for Local 414's breach of the Fort Wayne CBA. Plaintiffs' Complaint also asserts tortious interference with contract by Local 414 in that Local 414 intentionally induced Local 120 and Local 662 to breach their respective CBAs. Local 414 has moved to dismiss the complaint on various grounds, including that: the CBA requires arbitration of any dispute not barred by the statute of limitations; the Complaint is barred by the statute of limitations; and the Complaint fails to state a claim for relief against Local 414. Additionally, Local 414 contends that § 301 of the Labor Management Relations Act (LMRA) preempts Plaintiffs' state law tortious interference with contract claim. The Court turns now to these contentions.

---

[4] These activities included blocking the entrance to the Fort Wayne DC, striking vehicles with picket signs, making racist, sexist, and homophobic slurs to persons trying to enter the Fort Wayne DC, and striking a security contractor with a vehicle. (Compl. ¶82).

## DISCUSSION

### A. Motion to Compel Arbitration

#### 1. *Applicable Standard*[5]

Arbitration is a favored dispute resolution process in the law. But it is also a contractual matter. For this reason, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted); *Granite Rock Co. v. Int'l Brod. of Teamsters,* 561 U.S. 287, 299 (2010) ("Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.") (original emphasis, internal citations omitted). Thus, on a motion to compel arbitration, the court "must first determine whether the [movant] is making a claim that is, 'on its face,' governed by the [agreement's] arbitration clause." *Int'l Bhd. of Elec. Workers Loc. 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014) (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)).

#### 2. *Legal Analysis*

Local 414 seeks to compel Plaintiffs to pursue their claims through the arbitration provision in the Fort Wayne CBA. Seizing on language from *Drake Bakeries, Inc. v. Local 150,* 370 U.S. 254, 257–60 (1962), Local 414 asserts that the Plaintiffs must exhaust available arbitral remedies before suing a union under section 301 for damages related to an alleged breach of a no-strike

---

[5]Motions to compel arbitration concern venue and are properly addressed under Federal Rule of Civil Procedure 12(b)(3). *Grasty v. Colo. Tech. Univ.,* 599 F. App'x 596, 597 (7th Cir. 2015) (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (an arbitration clause is "simply a type of forum-selection clause," and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)). The Court may consider materials outside the pleadings when evaluating such a motion. *Johnson*, 556 F. App'x at 544-45.

obligation. *See Mautz v. Oren, Inc. v. Teamsters, Chauffeurs, and Helpers Union, Local No. 279,* 882 F.2d 1117, 1126 (7th Cir. 1989) (*citing Drake Bakeries, Inc. v. Local 150,* 370 U.S. 254, 257–60 (1962) (holding that clause requiring arbitration of "all complaints, disputes or grievances arising between [the agreement's signatories]" mandated arbitration of employer-initiated claims and complaints).

Local 414's position hinges on the one fact Plaintiffs dispute — that the breach of the no-strike obligations by Local 414 is governed by the arbitral remedies in the Fort Wayne CBA. Instead, the Plaintiffs argue that employer-initiated disputes, such as the one in this case, are not governed by the Fort Wayne CBA. *See Faultless Div. v. Local Lodge No. 2040 of Dist. 153 Int'l Machinists & Aerospace Workers,* 513 F.2d 987, 990 (7th Cir. 1975).

To determine whether the parties agreed to submit a "particular dispute to arbitration, [the court] must turn to the specific language of the arbitration clause. ... [In so doing, the court] look[s] first to the plain meaning of the provision and strive[s] to avoid absurd results." *Int'l Bhd. of Elec. Workers, Loc. 21 v. Ill. Bell Tel. Co.*, 491 F.3d 685, 688 (7th Cir. 2007). At the same time, the court must remain "mindful that both the law and public policy strongly favor arbitration, and that the party seeking arbitration is entitled to the benefit of the doubt. Where the arbitration clause is broad, [the court] presume[s] arbitrability of disputes. And where any ambiguity as to the scope of the clause exists, [the court] will construe it in favor of the party seeking arbitration." *NextEra*, 762 F.3d at 594 (internal citations omitted). Consequently, if a "grievance, on its face, clearly falls within the scope of [an] arbitration clause," the "dispute will be arbitrable ... unless [the court] can say otherwise with 'positive assurance'"—that is, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

8

asserted dispute." *Ibid.* (quoting *United Steelworkers of Am. v. Warrior & Gulf*, 363 U.S. 574, 582-83 (1960).

Turning then to the specific language in Article 14 of the Fort Wayne CBA, § 14:01 specifically requires the "aggrieved employee" to initiate the grievance and arbitration procedures in the Article. The first sentence begins "the aggrieved employee *must*" contact his supervisor with "any occurrence, differences, disputes or complaints arising over the interpretation or application" of the CBA. The second sentence confirms it: "[a]ny issue which cannot be resolved *between the aggrieved employee and a supervisor* within twenty-four (24) hours (one work day) will be moved to Step #1…." (emphasis added). Without action by the "aggrieved employee" then, the procedures in Article 14 are never implicated. If there was any doubt, the term "aggrieved employee" appears three times in the first two paragraphs of the procedures, emphasizing and limiting the scope of the Article. It is this limiting language that causes Local 414 problems. This is because Article 14 requires arbitration at Step 4 only of disputes that arise from any unresolved issue between an "aggrieved employee" and employer and, as Plaintiffs point out, because the CBA limits grievances to employee disputes, it is inapplicable to employer-initiated disputes.

The Seventh Circuit and district courts circuit-wide have repeatedly recognized that an arbitration clause found within a CBA's employee-oriented grievance procedure that gives only the union the option of proceeding to arbitration does not apply to employer-initiated disputes. *See Teledyne Wisconsin Motor v. Local 283, United Autom., Aerospace, and Agr. Implement Workers of America, UAW,* 530 F.2d 727 (7th Cir. 1976); *Faultless Division,* 513 F.2d 987; *Rental Services Corp. USA, Inc. v. Int'l Union of Operating Engineers, Loc. 150, AFL–CIO,* No. 99–5094, 1999 WL 1144904 (N.D. Ill., Dec. 9, 1999); *United Parcel Service, Inc. v. Int'l*

*Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, Local 705,* No. 95–6304, 1998 WL 699670 (N.D. Ill., Sept. 30, 1998).

In *Faultless Division,* the company sued the union over a work stoppage which, the company argued, violated the "no strike" provision of the parties' CBA. The CBA in that case provided a grievance procedure through which employees could submit disputes to union representatives and, eventually, to company representatives. *Faultless Division,* 513 F.2d 987, 988–89. If the grievance still was not resolved after presenting it to the company, "[t]he company shall be notified in writing by the Union of its intention to arbitrate said grievance." *Faultless Division,* 513 F.2d 987, 989. The CBA's only discussion of arbitration was in the context of the employee-oriented grievance procedure which gave only the union, and not the company, the option of proceeding to arbitration. *Id.*

Applying traditional contract principles, the Seventh Circuit held in *Faultless Division* that the CBA's grievance and arbitration procedure applied only to employee and union-initiated grievances and noted that it had been unable to find any language in the CBA calling for a different conclusion. *Id.* at 990. The court acknowledged the principle that doubts over arbitrability should be resolved in favor of arbitration but found that "there is no occasion to resort to this congressional policy (favoring arbitration) in a case where the contract, fairly read as a whole, is not susceptible to a construction that the parties bound themselves to arbitrate the dispute before the court." *Id.* at 991 (citation omitted).

Distinguishing the Fort Wayne CBA from the CBA in *Faultless,* Local 414 argues that Step 4 permits either party to submit a grievance to arbitration. True, Article 14 sets forth a four-step grievance process to be employed when unresolved issues persist between an employee and a supervisor. Step 4, in turn, states that if an agreement is not reached through the first three steps,

10

"the grievance may be submitted by either party to the Federal Mediation and Conciliation Service." This language, Local 414 asserts, differentiates the Fort Wayne CBA from the language in *Faultless* because either of the parties may begin arbitration if the grievance process breaks down.

This argument, however, ignores one significant fact that determines the issue before the Court. While either party has a right to demand arbitration of an "aggrieved employee's" disputes with the employer, Local 414 has pointed to no provisions in the Fort Wayne CBA authorizing the employer to initiate arbitration other than for an employee dispute. Anticipating this argument, Local 414 calls on *Eberle Tanning Co. v. Section 63L, FLM Joint Bd., Allegheny Div., United Food & Com. Workers Int'l Union,* 682 F.2d 430, 432–33 (3d Cir. 1982), for the proposition that an employer must arbitrate a no-strike claim under a grievance and arbitration clause like the one here.

The Court is not persuaded by *Eberle Tanning*. In that case, an after-hours altercation occurred in a local bar between an employee and his supervisor. The employee struck the supervisor and was disciplined. The employee invoked the four-step grievance and arbitration procedure and took the matter to arbitration. An arbitrator upheld the discharge. Upset by the arbitrator's decision, 150 of the Company's employees engaged in a work stoppage which lasted for seven days. The Company did not initiate arbitration for violation of the no-strike provision in the collective bargaining agreement but filed suit under § 301 seeking compensatory and punitive damages against the union. The union then moved to compel arbitration under the agreement.

In finding favorably to the union, the Third Circuit noted that the collective bargaining agreement included a broad definition of "grievance" which encompassed "any complaint of an alleged violation of this agreement or any dispute concerning the meaning and application of any

11

provision of the agreement." The agreement also contained an obligation that the company and the union meet monthly to resolve any outstanding grievances (as broadly defined), not just employee disputes. If any grievance was unresolved after these meetings, either party could submit it to arbitration.

The *Eberle* court determined that the agreement's far-reaching definition of "grievance" created an ambiguity. It further found that, although the first four steps of the "grievance machinery" are employee-oriented, it did not "necessarily foreclose recognition of the company's duty to arbitrate its 'complaint of an alleged violation' of the contract." *Eberle Tanning,* 682 F.2d at 435. Because of this ambiguity and "consistent with federal labor policy," which strongly favors arbitration, *id.* at 434, the court found that the company was required to arbitrate the dispute.

This same conclusion is not warranted here. Article 14 defines a grievance only by its reference to "any occurrence, differences, disputes or complaints arising over the interpretation or application" of the CBA **by an "aggrieved employee."** (Emphasis added). The four steps of the grievance procedure flow from this language. The inclusive language defining a grievance in *Eberle Tanning* is absent from the Fort Wayne CBA, and the CBA fails to evidence any intention by the employer to arbitrate its disputes arising from actions of the union. This reading of the CBA is bolstered by language in the No Strike Provisions which limit the scope of an employee's invocation of the grievance and arbitration procedures but does not require the employer to arbitrate violations of the No-Strike Provisions. In fact, nothing in Article 5 supports Local 414's argument that the Plaintiffs agreed to arbitrate violations of that article by the union.

In sum, Local 414 has not pointed to any provision in the Fort Wayne CBA which grants the Plaintiffs authority to demand arbitration let alone one that requires it to arbitrate disputes over alleged breaches of the CBA by the union. For this reason, the Court cannot say, "with positive

12

assurance" that employer claims are encompassed by the arbitration machinery. This dispute falls outside the scope of the arbitration provisions and Plaintiffs may proceed on its breach of contract claim in this court. The Motion to Compel Arbitration is, therefore, DENIED.

**B. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)**

   **1.** *Applicable Standards*

Local 414 has also moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6). It asserts two grounds: that the breach of contract claim is outside the applicable statute of limitations; and, even if timely brought, the Complaint fails to state a breach of contract claim against it.

Courts seldom dismiss claims under Rule 12(b)(6) for failure to be brought within the statute of limitations, because the statute of limitations is an affirmative defense. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014). Dismissal based on affirmative defenses is rare because "these defenses typically turn on facts not before the court at [this] stage." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). For dismissal to be granted, "the allegations of the complaint itself [must] set forth everything necessary to satisfy the affirmative defense." *Chi. Bldg. Design*, 770 F.3d at 613–14 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). If there is "*any* set of facts that if proven would establish a defense to the statute of limitations," then a motion to dismiss should be denied. *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). But claims may be dismissed under Rule 12(b)(6) when the running of the statute of limitations is apparent on the face of the complaint.

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a

complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2. *Statute of Limitations*

Local 414 argues that the Plaintiffs' breach of contract claim in Count I should be dismissed because the claim was filed outside the limitations period permitted by the LMRA. Local 414 asserts that Plaintiffs' § 301 claims are subject to a six-month statute of limitations for motions to compel arbitration under the LMRA – a period which has long since passed. Plaintiffs, in response, argue that its claim is a straight breach of contract claim under § 301 and, as such, the operable limitations period is determined under state law.

This identical argument arose in Local 120's Motion to Dismiss Count II and was addressed at length in the Court's Opinion and Order on that motion. (ECF No. 47 at 18-20). The result is the same here as the facts and arguments specific to Local 414 do not change the legal analysis. As a result, the Court incorporates the legal analysis undertaken in that Opinion and Order and DENIES Local 414's motion to dismiss on statute of limitations grounds.

3. *Failure to State a Claim*

Next, Local 414 argues that Plaintiffs' complaint fails to state a claim for breach of the No Strike Provisions in the Fort Wayne CBA. A breach of contract claim requires proof of three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff. *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). Plaintiffs

14

have properly alleged these elements here. Even so, Local 414 argues that Plaintiffs have pled themselves out of court because their Complaint alleges facts establishing the No Strike Provisions were not in effect at the time of the 2019 and 2020 Strikes.

When a contract is attached to the complaint, it becomes part of the pleadings and can be considered and interpreted as part of a motion to dismiss under Rule 12(b)(6) without improperly resolving disputed facts or converting the motion to one under Rule 56. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *Wright v. Associated Ins. Companies Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994). Recognizing this, both parties spend significant effort parsing through the Termination Provisions to support their respective positions and invite the Court to do the same.

Local 414 asserts that it gave the required notice of termination in § 35.01 and that its subsequent refusal to engage in continued negotiations after the September 20, 2019, meeting was enough to demonstrate its intent to terminate negotiations under § 35:03. The effect of its refusal, Local 414 asserts, is that it could properly strike without violating the No Strike Provisions.

To no one's surprise, Plaintiffs disagree. They contend that § 35.03 required separate notice by Local 414 of an intent to terminate negotiations or "that it is not probable that further negotiations will result in an agreement." As the argument goes, because no such new notice occurred, the No Strike Provisions remained in effect at the time of the strikes. Alternatively, the Plaintiffs point out that while their Complaint alleges that in September 2019 agents of Local 414 refused to return to the bargaining table, their Complaint also alleges that shortly after the 2019 Strike started, Local 414 represented in a letter that it had never been unwilling to continue

15

negotiations and sought continued negotiations. (Compl. ¶ 58). Thus, Plaintiffs assert that Local 414's intent is a factual issue not capable of resolution on a motion to dismiss.

The Court agrees with the Plaintiffs. Although contract interpretation is permissible when considering a motion under Fed. R. Civ. P. 12(b)(6), the Court need not reach that issue today. Plaintiffs have alleged a viable breach of contract claim based on its factual assertions. Whether some formal notice under § 35.03 is needed to terminate negotiations and invalidate the No Strike Provisions as Plaintiffs assert or not, both parties agree that the CBA required, at a minimum, Local 414 to evince an intent to discontinue negotiations or to have determined that continued negotiations were futile. This is not a question of contract interpretation; it is a factual question. Plaintiffs have properly alleged facts that Local 414 represented in a letter that it "had never been unwilling to continue negotiations." (Compl. ¶ 58). This allegation is sufficient for Plaintiffs to survive the motion to dismiss because the Court is required to accept its truth and, in doing so, the Plaintiffs state a claim for breach of contract plausible on its face. *Iqbal*, 556 U.S. at 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Motion to Dismiss for failure to state a claim is DENIED.

## C. Preemption of the Tortious Interference with Contract Claim

Local 414's final contention is that Count IV of the Complaint asserting tortious interference with contract by Local 414 is preempted by the LMRA. Section 301 of the LMRA preempts state law claims for violations of collective bargaining agreements. *Baker v. Kingsley,* 387 F.3d 649, 657 (7th Cir. 2004). To determine whether a state-law claim is preempted, courts look at the "legal character" of the claim: "a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement may go forward as a state-law

claim, whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the CBA, will be preempted." *Id.* (quotations and citations omitted). Said more simplistically, the LMRA applies to state law claims if "resolution of those claims is sufficiently dependent on an interpretation of the CBA." *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 286 (7th Cir. 2001) (en banc). "In practice, that means the LMRA preempts a state-law claim if the Court would have to interpret the CBA to resolve an element of the plaintiff's claim." *STS Express, LLC v. TMR Servs., Inc.*, No. 19-CV-05718, 2021 WL 4477828, at *4 (N.D. Ill. Sept. 30, 2021).

The elements of a tortious interference with contract claim under Indiana law are: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000). Plaintiffs' assertions in Count IV are as follows: (1) the Hopkins and Green Bay CBAs are valid and enforceable contracts; (2) Local 414 knew of these contracts; (3) Local 414 induced Locals 120 and 662 and the employees at the Hopkins and Green Bay DCs to breach multiple provisions of their respective CBAs; (4) damages. (Compl. ¶¶'s 105-110). Missing from these assertions are factual allegations anywhere in the Complaint supporting the fourth element – the absence of justification – that do not involve a reference to Local 414's breach of the Fort Wayne CBA.

On this note, Local 414 points out that the issue of justification cannot be resolved without addressing the various CBAs in this case. The Court agrees. Whether Local 414's conduct in extending its strike was justified depends on its obligations under the Fort Wayne CBA. Further, whether the Hopkins and Green Bay CBAs permitted employees at those facilities to refuse to

17

cross a picket line, requires interpretation of their respective CBAs. It is inevitable then, that this Court would have to interpret at least one of the CBAs involved in this case.

The Seventh Circuit's decision in *Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 572 (7th Cir. 1989), reinforces this result. In *Douglas*, the court found that the LMRA completely preempted an employee's state law claim for intentional infliction of emotional distress claim against her employer because it was impossible to resolve whether the employer's conduct was extreme and outrageous without interpreting the powers that the CBA granted to the employer. *See id.* at 571–72. In this case, the Court faces a similar situation in which it cannot resolve whether Local 414's conduct was unjustified without determining the parties' rights and obligations under the CBA. Resolution of Plaintiffs' claim would require this Court to interpret the CBA to determine whether Local 414's allegedly wrongful conduct was unjustified under the Fort Wayne CBA.[6] The Court finds that Plaintiffs' tortious interference with contract claim in Count IV is preempted by the LMRA.

## CONCLUSION

Based on the discussion above, Local 414's Motion to Dismiss or Compel Arbitration (ECF No. 25) is DENIED in part and GRANTED in part. The Court finds Count IV of the Complaint is preempted by the LMRA, the Motion is DENIED in all other respects.

---

[6] To avoid preemption, Plaintiffs' brief attempts to pull a rabbit out of their hat. Although Count IV explicitly references Local 414's conduct to induce breaches of the Hopkins and Green Bay CBAs during the strike extension in 2019, their brief asserts that the tortious interference claim is instead related to Local 414's interference with their customers at the Fort Wayne DC because of their picketing activities. (ECF No. 39 at 51: "Defendants' arguments…gloss over the operative allegations regarding Local 414's tortious conduct that are the focus of [Count IV].").

We cannot be looking at the same Complaint. While Plaintiffs do allege tortious activities by members of Local 414 **at the Fort Wayne DC** (Compl. ¶¶s 54, 82), those allegations are not tied to the tortious interference allegations pled in Count IV. If Plaintiffs intended to include the picketing activities as part of their tortious interference claim, they have not done so.

SO ORDERED on March 14, 2022.

                                                           s/ *Holly A. Brady*
                                                           JUDGE HOLLY A. BRADY
                                                           UNITED STATES DISTRICT COURT